**STRYKER CORPORATION,**
Plaintiff/Counter–
Defendant,

v.

**DAVOL, INC., Defendant/Counter–
Plaintiff.**

No. 4:96–CV–191.

United States District Court,
W.D. Michigan,
Southern Division.

March 6, 1998.

Gregory J. Vogler, Sharon A. Hwang, Richard T. McCaulley, McAndrews, Held & Malloy, Ltd., Chicago, Illinois, Charles E. Ritter, Miller, Canfield, Paddock and Stone, P.L.C., Kalamazoo, Michigan, for Stryker Corporation, for plaintiff/counterclaim-defendant.

Peter C. McCabe, III, Raymond C. Perkins, Peggy M. Balesteri, Winston & Strawn, Chicago, Illinois, Richard C. Kraus, Smith Haughey Rice & Roegge, Grand Rapids, Michigan, for Davol, Inc., for defendant/counterclaimant.

## OPINION OF THE COURT ON COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McKEAGUE, District Judge.

This is a patent infringement action concerning certain handheld surgical devices. Now before the Court is the motion of counter-defendant Stryker Corporation for summary judgment on Davol, Inc.'s counterclaims against it. Stryker contends there is no genuine issue of material fact and that it is entitled to judgment as a matter of law declaring that none of its products infringe either of the patents asserted in Davol's counterclaims. Having duly considered the motion, as well as Davol's opposition, the Court will, for the reasons that follow, grant the motion.

### I

■ Infringement occurs only if every limitation in a claim is met literally or by a substantial equivalent. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1389 (Fed.Cir.1992). The first step, determining the meaning and scope of patent claims allegedly infringed, is a matter of law, based on consideration of claim language, specification description, prosecution history, expert testimony and extrinsic evidence. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (*en banc*), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The second step is comparing the properly construed claims to the device accused of infringing. *Id.,* at 976.

Although infringement generally presents a question of fact, summary judgment may be appropriate if the Court is convinced, upon viewing the evidence presented in the light most favorable to the nonmovant, that the trier of fact could reasonably arrive at only one conclusion. See *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed.Cir.1995).

### II

■ Stryker is a Michigan corporation with its main offices in Kalamazoo. Stryker designs and manufacturers medical devices. Placed at issue by Davol's counterclaims are certain characteristics of a surgical irrigation handpiece and associated adaptor manufactured by Stryker. Davol alleges Stryker's manufacture, use and distribution of these products infringe claims of two patents held by it, United States Patent Nos. 5,391,145 ("the 145 patent") and 5,586,977 ("the 977 patent").

The 145 patent is entitled "Irrigation Control Valve for Endoscopic Instrument." Davol alleges Stryker's handpiece infringes claims 1, 3, 5 and 9 of the patent. Of these four claims, claim 1 is the only independent claim. The other three claims are dependent from claim 1. The parties agree that, under the present facts, the accused products can be deemed to infringe claims 3, 5 and 9 only if they are found to infringe independent claim 1.

Claim 1 describes "a disposable irrigation control valve assembly, comprising: a common conduit.... having means for attaching a surgical probe permitting said simultaneous suction and irrigation." Focusing on

the last terms in this description, Stryker contends the only common conduit disclosed in the patent which allows for simultaneous suction and irrigation is an "hourglass" design. On the strength of the declaration of Charles L. Nelson, Director of Disposable Product Development of Stryker Endoscopy, a division of Stryker, Stryker contends it does not manufacture, use or sell any control valve assembly which either has an hourglass shape conduit or permits simultaneous irrigation and suction at a surgical site. Therefore, Stryker contends it is entitled to judgment as a matter of law declaring that its accused products do not infringe the 145 patent.

### A. Hourglass Design

■ Stryker acknowledges that the 145 patent describes two types of common conduits, the hourglass design and the straight tube design, but asserts two reasons why the claim 1 language should be construed restrictively as limited to the hourglass design only. First, Stryker argues the claim 1 description of the common conduit is written in "means plus function" form. Specifically, according to the claim language, the common conduit must be of such structure as to permit simultaneous suction and irrigation. Stryker contends such a means plus function limitation must be construed in accordance with 35 U.S.C. § 112, ¶ 6:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and *such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.*

(Emphasis added). Thus, an accused device will be deemed to meet a means plus function limitation only if it employs means identical or equivalent to the structures, material or acts described in the patent specification and performs the identical function as specified in the claim. *Valmont Ind., Inc. v. Reinke Mfg. Co., Inc.,* 983 F.2d 1039, 1042 (Fed.Cir.1993).

Although claim 1 is not explicitly limited to the hourglass design, Stryker argues it must be construed as covering only such a common conduit structure as will permit simultaneous

suction and irrigation. Stryker contends the only common conduit design expressly identified in the patent specification as permitting simultaneous suction and irrigation is the hourglass design. Therefore, argues Stryker, only a control valve assembly with an hourglass shape conduit, or with a variant design equivalent in its functioning, can be deemed to infringe claim 1. Since the Stryker common conduit is neither, Stryker contends it does not infringe.

In response, Davol relies on the declaration of Roger E. Darois, Director of Product Development at Davol. He explains that one skilled in the art of designing and manufacturing laparoscopic surgical devices would read and interpret the specification and drawings of the 145 patent as disclosing two common conduit designs, straight wall and hourglass—both of which permit simultaneous suction and irrigation. He opines that claim 1 is generic, encompassing both species.

The Court concurs in Mr. Darois' construction. The specification language relied on by Stryker, found at lines 28–47 of column 7 of the patent, describes an "alternative embodiment" of the invention including the hourglass shape conduit. This description cites advantages of the hourglass shape for purposes of concurrent suction and irrigation, but does not suggest explicitly or by implication, that the straight tube design, the "preferred embodiment," is incapable of this concurrent functioning. Nor can claim 1, generic in its language, reasonably be construed as excluding the preferred embodiment absent highly persuasive evidence. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed.Cir.1996).

Moreover, if claim 1 were construed as exclusive of the straight-tube design, claim 8 would be rendered superfluous, an unreasonable construction, contrary to the doctrine of claim differentiation. See *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1023 (Fed.Cir.1987). Such a construction, contrary to the presumption that a difference between claims is significant, would be justified only by clear and persuasive evidence, not here presented. See *Modine*

*Mfg. Co. v. United States Int'l Trade Comm'n,* 75 F.3d 1545, 1551 (Fed.Cir.1996).

■ Stryker maintains the prosecution history compels a narrower construction of claim 1. Indeed, the prosecution history is of "primary significance" in understanding and construing claim language. *Markman,* 52 F.3d at 980. It cannot be used, however, to "enlarge, diminish or vary the limitations in the claims." *Id.*

■ The 145 patent prosecution history includes an exchange between the patent examiner and the applicant reflecting two significant points: (1) mutual recognition that claim 1 is generic, i.e., includes both the straight tube and hourglass conduit designs; and (2) the applicant's election to prosecute the claims only with respect to the hourglass design, *if* the generic claim were held not allowable. Stryker's reliance on the applicant's restrictive election would thus be well-taken if generic claim 1 had not been allowed. Claim 1 was allowed, however, without material amendment; hence the applicant's contingent election did not become effective to limit the scope of the patent. The prosecution history thus confirms the Court's construction of claim 1 as including both disclosed conduit designs.

Accordingly, the Court concludes Stryker's accused product does not fall outside the scope of claim 1 simply because it employs a straight tube rather than an hourglass shape conduit.

### B. Simultaneous Suction and Irrigation

Stryker next contends its surgical irrigation handpiece does not infringe claim 1 because it lacks capability for simultaneous suction and irrigation. Citing the Nelson declaration, Stryker maintains it has never manufactured, used or sold a surgical probe that can be attached to its handheld control value so as to permit simultaneous suction and irrigation at the surgical site. Stryker admits it has manufactured an adaptor which allows attachment of a Davol surgical probe to its control value. Yet, though the Davol probe allows simultaneous functioning when attached to a Davol handpiece, it does not allow simultaneous functioning when attached to the Stryker handpiece, without modification of the probe. See Darois decla-

ration, ¶ 12. As to this critical fact, there is no dispute. Where the Stryker handpiece can be made to practically allow for simultaneous functioning only by fitting it with a nonexistent, but hypothetical, modified probe, Stryker argues its product cannot, as a matter of law, be deemed to infringe all limitations of claim 1.

■ The Court agrees. As observed by the Federal Circuit, "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *High Tech Med. Instrumentation v. New Image Ind., Inc.,* 49 F.3d 1551, 1555 (Fed.Cir.1995).

Davol argues the Stryker handpiece could be made to permit simultaneous functioning even without altering *it,* if it were attached to an appropriately designed, newly fabricated probe or to an easily modified existing probe. Yet, significantly, Davol concedes no such probe now exists. This is the crux of the matter. The outcome would be different *if* such a probe existed, and the Stryker handpiece were manufactured with knowledge of the existence of such a probe and with capability for attachment thereof. *Cf., id.,* at 1556 (if a device is designed to be altered or assembled before operation, manufacturer may be liable for infringement if device, as altered or assembled, infringes a valid patent); *Intel Corp. v. United States Int'l Trade Comm'n,* 946 F.2d 821, 832 (Fed.Cir.1991) (device programmable, as made and sold, to perform patented function, deemed presently capable and therefore infringing); *Cyrix Corp. v. Intel Corp.,* 846 F.Supp. 522, 536 (E.D.Tex.1994), *aff'd,* 42 F.3d 1411, 1994 WL 685455 (Fed.Cir.1994) (to infringe, accused device must have presently existing capability of functioning as described by claim). On the present record, however, it is undisputed that the particular probe necessary to enable the Stryker handpiece to provide simultaneous functioning does not exist. In other words, there is no evidence that the accused handpiece is presently capable of permitting simultaneous suction and irrigation. In the words of the claim 1 limitation, there is no evidence that the accused handpiece includes "a common conduit having means for attaching a surgical probe permitting simultaneous

suction and irrigation." There being no evidence that this means plus function limitation is met, there is no genuine issue of material fact and Stryker is entitled to summary judgment declaring as a matter of law that its accused handpiece does not infringe claims 1, 3, 5 and 9 of the 145 patent.

### III

■ The patent which is the subject of count II of Davol' s counterclaim, the 977 patent, is entitled "Quick Disconnect Fitting for Coupling Interchangeable Probe Tip to Laparoscopic Instrument." Davol alleges Stryker has manufactured, used or sold surgical irrigation handpiece adaptors which infringe claims 3 and 4 of the patent. Claims 3 and 4 both describe "an interchangeable probe system for use with a surgical valve assembly" comprising an "o-ring assembly," "including a notch defined by an outer surface portion of said second end of said adaptor means and *a second groove defined by an inner surface portion of said attachment member,* said notch and second groove housing an o-ring, when said attachment member is removeably secured to said second end of said adaptor means said o-ring assembly providing a sealed and aligned relationship between said attachment member and said adaptor means." (Emphasis added).

Stryker moves for summary judgment of non-infringement, contending its accused device includes a probe attachment member that has no "second groove," but rather a flat or smooth inside surface. Davol acknowledges that Stryker's adaptor does not include a second groove, but contends it infringes nonetheless under the doctrine of equivalents.

■ "An accused product that does not literally infringe a claim may infringe under the doctrine of equivalents if 'it performs substantially the same function in substantially the same way to obtain the same result.'" *Southwall,* 54 F.3d at 1579, quoting *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). "Only if an accused product contains specific structure which meets all limitations of an asserted claim directed to structure, at least equivalently, can that product infringe under the doctrine of equiv-

alents." *Id.* The Supreme Court has recently made clear that this "function-way-result" comparison of accused product to patent claim must be made on an element-by-element basis:

> Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

*Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1049, 137 L.Ed.2d 146 (1997).

Stryker's adaptor is structurally identical to the invention described in claims 3 and 4, except that it lacks the second groove. Davol contends the Stryker o-ring assembly performs the same function (sealing means) in the same way (compressing an o-ring between adjacent surfaces) to achieve the same result (preventing fluid leakage). Because there is no substantial difference, Davol contends, the Stryker adaptor infringes as an equivalent product.

Stryker's response is two-fold. First, Stryker argues Davol's proposed application of the doctrine of equivalents is too broad, violating the recent lesson of *Warner–Jenkinson.* The function-way-result should be applied, Stryker contends, not to the o-ring assembly as a whole, but to the particular element at issue, the second groove. According to the claim language, the second groove, working in conjunction with the notch and o-ring, provides not only a means of sealing, but also an "aligned relationship." Stryker contends there is no evidence that the seating of the o-ring against the smooth inside surface of its attachment member provides this "aligned relationship." The smooth, or non-grooved surface is thus said not to perform "substantially the same function in substantially the same way to obtain the same result" as does the grooved surface described in the claim language.

Indeed, the Court observes that Mr. Darois, in opining that the Stryker adaptor is

substantially equivalent, conspicuously avoids reference to the second groove's contribution to provision of an aligned relationship. This aligned relationship between the attachment member and the adapter means is an express limitation in both claims 3 and 4. In the absence of evidence that Stryker's smooth surface functions substantially similarly in this respect, and Davol has failed to adduce any, the Stryker adaptor cannot reasonably be deemed to meet all limitations of the asserted claims. To hold, on the present record, that Stryker's non-grooved surface is equivalent to the grooved surface described in the claims would be to improperly enlarge the patent beyond the scope of its claims, erasing a presumptively meaningful structural and functional limitation on which the public is entitled to rely in avoiding infringement. See *Warner–Jenkinson*, 117 S.Ct. at 1049; *Hoganas AB v. Dresser Ind., Inc.*, 9 F.3d 948, 954 (Fed.Cir.1993). It follows that there is no genuine issue of material fact and that Stryker is entitled to summary judgment of non-infringement on count II of Davol's counterclaim.

This result is further buttressed by consideration of the 977 patent prosecution history. As observed in *Southwall*, the doctrine of equivalents "is not a tool for expanding the protection of a patent after examination has been completed." 54 F.3d at 1579. "Thus, prosecution history estoppel limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent." *Id.*

The 977 patent prosecution history is somewhat ambiguous. It does not unequivocally demonstrate that inclusion of the second groove limitation in claims 3 and 4 was necessarily essential to patentability. Nor does it compel the conclusion that Davol's cancellation of more broadly worded claims, after rejection by the patent examiner, should necessarily estop it from arguing that a non-grooved surface is equivalent to a grooved surface. However, the prosecution history clearly supports—rather than rebuts—the presumption that there was a substantial reason related to patentability for including the specific description of the o-ring assembly's functioning, and particularly the second groove limitation, in the claims that were ultimately allowed. See *Warner–*

*Jenkinson*, 117 S.Ct. at 1051. Davol has failed to carry its burden of rebutting this presumption. See *id.* (patent-holder bears burden of rebutting presumption). The presumption is therefore intact, lending support to the Court's above construction of the second groove limitation as meaningful and not to be eliminated under the doctrine of equivalents on the present record.

## IV

For the foregoing reasons, Stryker's motion for summary judgment will be granted and Stryker will be awarded judgment in its favor on both counts of Davol's counterclaim. A judgment order consistent with this opinion shall issue forthwith.

## JUDGMENT ORDER

In accordance with the Court's written opinion of even date,

**IT IS HEREBY ORDERED** that the motion of counter-defendant Stryker Corporation for summary judgment of non-infringement on both counts of counter-plaintiff Davol, Inc.'s counterclaim against it is **GRANTED;** and

**IT IS FURTHER ORDERED** that Stryker Corporation is hereby **AWARDED JUDGMENT** in its favor on both counts of the counterclaim of Davol, Inc., the Court finding there is no genuine issue of material fact and that Stryker Corporation's accused products do not, as a matter of law, infringe either United States Patent No. 5,391,145 or No. 5,586,977.