**BIONX IMPLANTS, INC.; Bionx Implants, Oy; and Dr. Saul N. Schreiber, Plaintiffs,**

v.

**LINVATEC CORP., Defendant.**

**No. 98 Civ. 7360(JSR).**

United States District Court,
S.D. New York.

May 31, 2000.

Michael Loughnane, Richard Mayer, Paul Richter, Jr., Kenyon & Kenyon, New York, NY, for Plaintiffs.

John J. Normile, Bruce Barker, Claudia Zumbro, Pennie & Edmonds, LLP, New York, NY, for Defendant.

*OPINION AND ORDER*

RAKOFF, District Judge.

As every sometime athlete is acutely aware, tears to the menisci—the gristle-like structures that act as shock absorbers to the knees—are painfully common. Until relatively recently, the form of suture commonly used in repairing such tears was a large surgical staple. In 1989, however, plaintiff Saul N. Schreiber, M.D., patented a smaller, less cumbersome alternative known as the Bionx Meniscus Arrow (the "Arrow")—essentially a small plastic nail

with swept-back barbs to hold the suture in place. Manufactured by co-plaintiff Bionx Implants, Oy, a Finnish corporation, and marketed and distributed in the United States by co-plaintiff Bionx Implants, Inc., the Arrow soon became the suture of choice for meniscal repairs.

In 1996, however, defendant Linvatec Corporation began marketing an alternative suture known as the Linvatec BioStinger (the "BioStinger"). Like the Arrow, the BioStinger consists of a small plastic shaft with swept-back barbs. Unlike the Arrow, however, the BioStinger is somewhat flexible and has a hole running lengthwise through its interior, thereby permitting methods of insertion not normally available with the Arrow. Contending, in effect, that these differences are inconsequential so far as the Arrow's patent protection is concerned, Dr. Schreiber and the Bionx companies brought suit against Linvatec for patent infringement.

Following discovery, both sides moved for summary judgment on their respective behalfs. While their well-wrought submissions raised many interesting issues, the Court concludes that it need not reach most of these issues because the relative flexibility of the BioStinger is sufficient in itself to compel summary judgment in defendant's favor.

Although the Arrow patent, No. 4,873, 976 (the " '976 Patent") includes thirty-one claims, all define the patented device as "rigid," specifically:

> a single unit suture for body tissue repair comprising:
> — a solid base member for seating against an exterior surface of said tissue;
> — a single rigid shaft portion upstanding from and integrally connected to said base member adapted for insertion into said tissue; and
> — barb means integrally connected to said shaft portion to aid in insertion of said shaft portion into said tissue and to lock said shaft portion into said tissue.

Pl.Ex. 1, col. 4.32–41.[1] Thus, a similar device that is not rigid would not infringe this patent. *See Southwall Technologies, Inc. v. Cardinal IG Co.* 54 F.3d 1570, 1575 (Fed.Cir.1995).

Upon even brief inspection, it is apparent that the Arrow is "rigid" in the ordinary sense of stiff or brittle, while the BioStinger is notably more flexible.[2] More to the point, the language and history of the '976 Patent show that it is premised on a meaning of "rigid" that precludes its application to the BioStinger. To begin with, to qualify as "rigid" within the specifications of the '976 Patent, a suture must be designed to be pushed through tissue. *See* patent specifications at Pl.Ex. 1, col. 2.66—3.1 ("[s]utures, in accordance with the invention … are formed of a material

---

1. Certain of the claims insert "having a substantially flat portion" before the words "for seating against," the word "cylindrical" before the words "shaft portion," and the words "and having a pointed end for insertion into said tissue" in place of "adapted for insertion into said tissue." Certain other claims omit the words "for seating against an exterior surface of said tissue" and "adapted for insertion into said tissue," and replace "integrally connection to said shaft portion to aid in insertion of said shaft portion into said tissue and to lock said shaft portion into said tissue" with "located on and integrally connected to said shaft portion." Finally, certain of the claims omit the words "an exterior surface of," replace the word "portion" with "member," replace the words "adapted for inser-

tion into said tissue" with "for insertion into said tissue and across said tear," and replace the final requirement of the description with "barb means located on said shaft member for locking said shaft member in said tissue and for providing compression between said barb means and said base member." Pl.Ex. 1, col. 4—6. None of these variations affects the analysis below.

2. Thus, as the Court personally discovered at oral argument, *see* transcript 8/17/00, upon even slight pressure the Arrow breaks, while the BioStinger, under greater pressure, simply bends. These casual observations, however, are not central to the Court's analysis.

having sufficient rigidity to allow the sutures to be pushed through the tissues to be repaired."). The BioStinger, however, is designed, not to be pushed through tissue like the Arrow, but rather to be inserted into a precut channel created by a guide needle. Although the BiosStinger, despite its flexibility, has sufficient cohesion that its insertion down the precut channel may slightly widen that channel, this is a far cry from being designed, like the Arrow, with the rigidity necessary to be pushed directly through the semi-hard cartilage of a meniscus without any precutting.

■ Moreover, in his successful effort to obtain the '976 patent, Dr. Schreiber submitted an affidavit to the Patent Office stating that the patent should be granted notwithstanding the prior patenting of a suture known as the "Kronenthal device," because "[t]he Kronenthal et al. suture is not a rigid type of suture as I have disclosed and claimed in my above noted patent application, but is a flexible type of filament *which cannot by itself be pushed into a body tissue without the use of a needle.*" Pl.Ex. 10 at 0046 (emphasis added). Such "prosecution history" clearly shows that the use of the term "rigid" in the Arrow patent was intended to distinguish that device from other devices, such as the Kronenthal device and (now) the BioStinger, that were designed to be inserted in needle-cut channels. *See generally, York Products, Inc. v. Central Tractor Farm & Family Center,* 99 F.3d 1568, 1575 (Fed.Cir.1996).[3]

Notwithstanding the foregoing, plaintiffs argue that the BioStinger is not sufficiently non-rigid to be distinguished from the Arrow because, whatever the differences in the contemplated methods of insertion,[4] the BioStinger is at least *capable* of being pushed through meniscus tissue and the Arrow is at least *capable* of being inserted through a pre-cut channel. The latter, however, is irrelevant, since even devices that plaintiffs concede are not "rigid" can be inserted through pre-cut channels—the prior Kronenthal device that Dr. Schreiber sought to distinguish being a prime example, *see* Def. Ex. O, col. 5.14–18. As for the former argument, while plaintiffs effectively concede that, apart from this litigation, the BioStinger has never been inserted into meniscal tissue without the use of the channel-cutting needle with which it is sold, *see, e.g.,* Pl. Opp. to Def. 56.1 Stmt. on Rigidity ¶¶ 236, 247, plaintiffs nevertheless offer a videotape, specially prepared for this case, that shows, they allege, that the BioStinger is capable of being pushed into uncut meniscal tissue.

■ The insertion in the videotape, however, is made possible only by use of a special "insertion rod" that plaintiffs concede was designed specifically for the videotaped demonstration. Pl. Opp. to Def. 56.1 Stmt. on Rigidity ¶ 255, 262; Pl. Ex. 4 (videotaped demonstration). It thus runs afoul of the well-established rule that a device does not infringe merely because it can be altered to make it infringe, as "the question is not what a device might have been made to do, but what it was

**3.** While plaintiffs cite *Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.,* 74 F.3d 1216, 1220 (Fed.Cir.1996) for the proposition that prosecution history that does not amend claims language can be used to limit claim scope only if it clearly disavows such coverage, the disavowal here is plain. Moreover, *Sofamor* simply rejected application of prosecution history purporting to add to the claim a limitation not contained in its language, rather than—as in the instant case—construing existing claim language (*i.e.,* what constitutes a "rigid" shaft).

**4.** Although the specification portion of the '976 Patent states in passing that, in addition to insertion by pushing into uncut tissue, "[t]he end of the applicator cylinder or the end of a pushertype rod can be provided with a blade end (not shown) for creating or initiating a channel in the tissue for the suture to pass through," Pl.Ex. 1, Col. 4.6–9, it is apparent from all the other descriptions and drawings in the patent that the '976 device was generally intended to be pushed into place through uncut tissue, and that, more importantly, it was the capability of being so inserted that was captured in the term "rigid."

intended to do and did do." *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1555 (Fed.Cir.1995) (internal quotation marks omitted); *see also Stryker Corp. v. Davol, Inc.*, 10 F.Supp.2d 841 (W.D.Mich.1998) (finding non-infringing surgical device that could perform as required by patent holder's claims only if attached to a probe that was not commercially available).

In sum, the plain language of the patent, the ordinary observation of the respective devices, the undisputed differences in their designs, the prosecution history of the patented device, and the subsequent use of the respective devices demonstrate beyond any genuine factual dispute that the BioStinger is not "rigid" in the way specified in the '976 Patent. Accordingly, defendant's motion for summary judgment is hereby granted, and the complaint is dismissed.

SO ORDERED.