**HIGH TECH MEDICAL INSTRUMENTATION, INC., Plaintiff–Appellee,**

v.

**NEW IMAGE INDUSTRIES, INC., Defendant–Appellant.**

No. 94–1360.

United States Court of Appeals, Federal Circuit.

March 6, 1995.

Jack L. Slobodin, Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, San Francisco, CA, argued for plaintiff-appellee. With him on the brief was Stephen J. Akerley.

Mark E. Miller, Fliesler, Dubb, Meyer & LoveJoy, San Francisco, CA, argued for defendant-appellant. With him on the brief were Martin C. Fliesler and Burt Magen.

Before MICHEL, SCHALL and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This is an appeal from an order of the United States District Court for the Northern District of California, No. C93–4152 SBA (June 3, 1994), granting a patent holder's motion for a preliminary injunction in a pat-

ent infringement suit. Although the district judge engaged in a detailed analysis that makes us reluctant to second-guess her judgment, we have concluded that the court committed legal errors that require reversal of the order granting preliminary injunctive relief.

I

Appellee High Tech Medical Instrumentation, Inc., (HTMI) is the assignee of all rights to reexamined United States Patent No. 4,858,001 (the '001 patent). The patent discloses a hand-held endoscope—a miniature imaging device—that is designed for use in dental work. A small video camera is contained within a thin, tube-shaped device that can be placed inside a patient's mouth so that a dentist can obtain an electronic image of any area of the oral cavity. The image can then be displayed on a screen in the dentist's office or preserved for later review.

The claim principally at issue in this case is claim 24 of the '001 patent. That claim recites:

An endoscopic optical device comprising:
a body member;
a camera disposed in said body member, said camera being rotatably coupled to said body member; and
an objective element coupled to said body member and arranged to focus an image of a target upon said camera.

As explained in the specification of the '001 patent, a camera that is "rotatably coupled" to its housing permits the operator to rotate the camera within the housing during use while the camera remains at the proper distance from the objective element so that the image remains in focus. The rotation of the camera results in the rotation of the image produced by the camera on the viewing screen, so that the operator, by twisting a section of the handle that is attached to the camera, can turn the image on the screen to the orientation most convenient for viewing.

Early in 1991, appellant New Image Industries, Inc., (New Image) acquired a company that was making an intraoral endoscope and began marketing a version of its device under the name "AcuCam." In November 1993, HTMI filed an action charging New Image with infringement of its rights under the '001 patent. The complaint alleged infringement of claims 24, 30, and 31 of the '001 patent. At the same time, HTMI moved for a preliminary injunction to prevent New Image from infringing its rights under the '001 patent pending trial.

In considering whether to grant preliminary injunctive relief, the district court took evidence and made findings with regard to the structure and operation of the AcuCam. The evidence showed that although the Acu-Cam is similar in some respects to the endoscope claimed in the '001 patent, the AcuCam camera, as designed and sold, does not rotate within its housing. Instead, the camera is fixed within the housing by two set screws, which prohibit the rotation of the camera when they are tightened. The district court found that, when the two set screws are loosened, the AcuCam camera can rotate within its housing. New Image contested that finding and argued that, in any event, there is no reason for an operator to loosen the set screws during routine use. New Image's counsel represented to the district court that the AcuCam system uses software, not physical rotation of the camera, to rotate the image to the preferred orientation on the viewing screen.

The district court applied the familiar four-part test to determine whether to grant a preliminary injunction: (1) whether the moving party is likely to succeed on the merits; (2) whether the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) whether the balance of hardships tips in favor of the moving party or the opponent; and (4) whether the grant of preliminary injunctive relief will adversely affect the public interest. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555, 31 USPQ2d 1781, 1783 (Fed.Cir.1994).

With respect to HTMI's prospects of success on the merits, the district court found that HTMI had made a clear showing that the AcuCam infringed claim 24 of the '001 patent. Focusing on the "rotatably coupled" limitation of claim 24—the only limitation in dispute—the court found that because the

AcuCam camera can be rotated within its housing when the set screws are loosened, the AcuCam camera must be considered "rotatably coupled" to the body member.

As to the validity of claim 24, the court found that HTMI had clearly established validity for purposes of the preliminary injunction proceedings. The court relied on the statutory presumption of validity, 35 U.S.C. § 282, and the fact that New Image had been "unable to offer any credible challenge" to the validity of the '001 patent.

The district court next turned to the irreparable harm element of the four-part test. Based on its findings that both infringement and validity were clearly shown, the court held that HTMI was entitled to a presumption that it would suffer irreparable harm in the absence of preliminary injunctive relief. Although the court noted that HTMI had delayed filing suit for almost 17 months after the issuance of the reexamination certificate, the court concluded that HTMI's delay in seeking preliminary relief was not sufficient by itself to rebut the presumption of irreparable harm.

The district court next found that, in light of the time and resources HTMI expended in securing the '001 patent, the balance of hardships tipped in HTMI's favor. Although the court noted that AcuCam sales made up approximately 77 percent of New Image's revenues during the prior year, the court ruled that it "is not appropriate ... for an infringer to cite to losses suffered as a result of enjoining that infringement as a 'hardship,' where, as here, the plaintiff has made a strong showing of validity and infringement."

The court found that the fourth factor— the effect of an injunction on the public interest—weighed slightly in New Image's favor and against granting an injunction. The court noted that New Image had cited the public health benefits of intraoral cameras and that New Image was supplying a substantial share of the market of such cameras. Upon considering all four factors together, however, the district court concluded that the public interest did not outweigh the factors supporting a preliminary injunction. The court therefore granted an injunction against New Image's infringement of claim 24 of the '001 patent and prohibited New Image from "making, using, or selling the AcuCam in the United States or its territories pending resolution of this matter at trial on the merits."

The court reached a different result on HTMI's request for an injunction against infringement of claim 30 of the '001 patent. The court found that HTMI had failed to prove that it was likely to succeed in establishing infringement of claim 30 at trial and therefore was not entitled to preliminary injunctive relief as to that claim. HTMI withdrew its reliance on claim 31 as a basis for seeking a preliminary injunction.

## II

Congress has authorized district courts in patent cases to grant injunctions "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. That provision authorizes courts in infringement actions to grant preliminary injunctions pending trial, as well as permanent injunctions after a full determination on the merits. This court has made clear that the standards applied to the grant of preliminary injunctions are the same in patent cases as in other areas of the law. *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387, 2 USPQ2d 1926, 1927 (Fed.Cir.1987). The court has noted that a preliminary injunction is "not to be routinely granted." *Intel Corp. v. ULSI Sys. Technology, Inc.*, 995 F.2d 1566, 1568, 27 USPQ2d 1136, 1138 (Fed.Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 923, 127 L.Ed.2d 216 (1994). After a district court has granted a preliminary injunction, however, this court will reverse only if the district court has "abused its discretion, committed an error of law, or seriously misjudged the evidence." *Hybritech Inc. v. Abbott Lab.*, 849 F.2d 1446, 1449, 7 USPQ2d 1191, 1194 (Fed.Cir.1988).

New Image challenges the district court's decision on each of the issues on which the court ruled against it. We conclude that the district court committed legal errors in the course of disposing of two of the issues be-

fore it: HTMI's likelihood of success on the merits of its infringement claim, and HTMI's claim that it will suffer irreparable harm if it is denied injunctive relief pending trial. Because we conclude that the injunction granted in this case cannot be sustained in light of our disposition of those issues, it is unnecessary to address the arguments directed to the other factors bearing on the issuance of preliminary injunctive relief.

### Infringement of Claim 24

■ As noted, the district court found that loosening the two set screws that attach the AcuCam camera to its housing permits the camera to rotate about the longitudinal axis of the housing without shifting position along that axis. The court acknowledged that the AcuCam camera was not intended to rotate within the housing and that the set screws prevent such rotation when they are tightened. Nonetheless, because it found that the camera is "rotatably coupled to the body member" when the set screws are loosened or removed, the court concluded that the AcuCam infringes claim 24 of the '001 patent and that "the addition of two easily removable set screws ... does not preclude a finding of infringement."

New Image asks us to find clear error in the district court's findings regarding the structure and functioning of the AcuCam. According to New Image, the AcuCam camera rotates within its housing only when both the set screws and a separate retaining ring are loosened. But when those two coupling devices are both loosened, New Image argues, the camera slides along the longitudinal axis of its housing so that the image falls out of focus and the device becomes unusable.

On the record before us, we cannot find clear error in the district court's findings regarding the operation of the device. Although New Image points us to drawings and other evidence, that evidence is not sufficiently conclusive to overcome the district court's finding that when the set screws in the AcuCam are loosened, the camera rotates within its housing and remains at a fixed distance from the focusing objective.

Even accepting the district court's view of the structure and operation of the AcuCam, however, it is far from clear that the "rotatably coupled" limitation in claim 24 of the '001 patent reads on the AcuCam. In the AcuCam, as designed, sold, and intended for use, the camera is rigidly coupled to its housing. The original and intended operating configuration of the device must be altered— by loosening the set screws—in order for the camera to rotate.

■ The district court found a likelihood of infringement based on its conclusion that, but for the set screws, "the camera is otherwise coupled to the body member in such a manner that it is capable of being rotated." But a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim. *See Hap Corp. v. Heyman Mfg. Co.,* 311 F.2d 839, 843, 135 USPQ 285, 288 (1st Cir.1962) ("The question is not what [a device] might have been made to do, but what it was intended to do and did do .... [T]hat a device could have been made to do something else does not of itself establish infringement."), *cert. denied,* 373 U.S. 903, 83 S.Ct. 1290, 10 L.Ed.2d 198 (1963).

The district court did not consider it relevant whether New Image intended or anticipated that dentists would remove the set screws and render the AcuCam camera "rotatably coupled" during normal operation, or whether any dentist had actually operated the AcuCam in that fashion. Instead, relying on this court's decision in *Intel Corp. v. United States Int'l Trade Comm'n,* 946 F.2d 821, 20 USPQ2d 1161 (Fed.Cir.1991), the district court held that it was enough that the Acu-Cam camera could be converted to a "rotatably coupled" configuration with relative ease. The court read *Intel* to mean that if a particular device can be altered without undue difficulty to operate in an infringing manner, the device, as sold, must be deemed to infringe.

*Intel* does not support so broad a holding. All that was required by the limitation at issue in *Intel* was that the claimed invention, an integrated circuit memory device, was "programmable" to operate in a certain manner. The accused device, although not specifically designed or sold to operate in that

manner, could be programmed to do so; that is, it was "programmable" to operate in the designated mode. The claim at issue in *Intel* therefore read on the accused device, as made and sold. The AcuCam camera, by contrast, is not rotatable within its housing unless the AcuCam is altered, at least to the extent of removing or loosening the set screws that secure the camera to the housing.

■ The fact that it is possible to alter the AcuCam so that the camera becomes "rotatably coupled" to its housing is not enough, by itself, to justify a finding that the manufacture and sale of the AcuCam infringe HTMI's patent rights. Of course, if a device is designed to be altered or assembled before operation, the manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a valid patent. *See Paper Converting Mach. Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 19, 223 USPQ 591, 597 (Fed.Cir.1984) (components of a machine held to infringe when components are ready for assembly and serve "no useful non-infringing purpose"); *Hansen v. Siebring*, 231 F.Supp. 634, 644, 142 USPQ 465, 472 (N.D.Iowa), *aff'd*, 346 F.2d 474 (8th Cir.), *cert. denied*, 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965). That principle is inapplicable here, however, because the record provides no reason to disregard the set screws in determining the character of the coupling between the AcuCam camera and its housing.

As the district court found, New Image did not design the AcuCam camera to rotate within its housing during operation; nor was there any reference to the rotation of the camera in the AcuCam promotional materials that were made part of the record. In addition, it does not appear from the record that removing the set screws would serve any functional purpose not already accomplished by other means, and HTMI offered no evidence that any user of the AcuCam had loosened or removed the set screws prior to or during actual use.

Under these circumstances, HTMI has not established that the AcuCam is "rotatably coupled" to its housing in spite of the set screws that prevent the camera from rotat-

ing. Accordingly, on the present state of the record we cannot agree with the district court that HTMI is likely to succeed in proving that the AcuCam infringes claim 24 of the '001 patent.

### *Irreparable Harm*

■ The district court based its finding of irreparable harm not on any affirmative showing of prospective harm to HTMI, but on a presumption of irreparable harm stemming from the strength of HTMI's showing on the merits. HTMI follows the same tack: it does not identify any specific injury it would suffer from the denial of a preliminary injunction, but instead relies entirely on the presumption of irreparable harm.

Reasoning by analogy from decisions involving other forms of intellectual property, this court has held that a presumption of irreparable harm arises when a patentee makes a clear showing that a patent is valid and that it is infringed. *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1271–72, 225 USPQ 345, 348–49 (Fed.Cir.1985). The presumption of irreparable harm is unavailable here, however, because, as we have discussed, the record does not support HTMI's claim that it is likely to succeed in proving that the AcuCam infringes claim 24 of the '001 patent. Aside from the presumption, the district court pointed to no evidence that would support a finding of irreparable injury, and we find none.

HTMI does not make or sell dental endoscopes and does not license their manufacture and sale under the '001 patent. Although a patentee's failure to practice an invention does not necessarily defeat the patentee's claim of irreparable harm, the lack of commercial activity by the patentee is a significant factor in the calculus. Because it does not compete with New Image or have licensees who could be injured by competition from New Image, HTMI does not run the risk of losses of sales or goodwill in the market; nor has HTMI suggested that New Image's activities have precluded it from licensing its patent or entering the market. *See Roper Corp. v. Litton Sys., Inc.*, 757 F.2d at 1273, 225 USPQ at 349; *Reebok Int'l Ltd.*

*v. J. Baker, Inc.*, 32 F.3d at 1558, 31 USPQ2d at 1785. There also is no indication in the record that HTMI needs an injunction to protect its right to refuse to exploit its invention commercially or to prevent others from doing so. To the contrary, the evidence shows that HTMI offered a license to New Image, so it is clear that HTMI is willing to forgo its patent rights for compensation. That evidence suggests that any injury suffered by HTMI would be compensable in damages assessed as part of the final judgment in the case. *See T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc.*, 821 F.2d 646, 648, 3 USPQ2d 1316, 1318 (Fed.Cir.1987) (licensing is "incompatible with the emphasis on the right to exclude that is the basis for the presumption in a proper case").

■ Neither in its brief nor in oral argument has HTMI contended that New Image would be unable to respond in damages for any infringement that may be found at trial. To be sure, "the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Hybritech Inc. v. Abbott Lab.*, 849 F.2d at 1456–57, 7 USPQ2d at 1200; *see also H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d at 390, 2 USPQ2d at 1930; *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233, 227 USPQ 289, 292 (Fed.Cir. 1985). Nonetheless, "there is no *presumption* that money damages will be inadequate in connection with a motion for an injunction pendente lite." *Nutrition 21 v. United States*, 930 F.2d 867, 872, 18 USPQ2d 1347, 1351 (Fed.Cir.1991). The availability of damages is particularly significant when, as here, the patentee can point to no specific interest that needs protection through interim equitable relief. *See Illinois Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 683, 15 USPQ2d 1307, 1310 (Fed.Cir.1990).

Finally, as the district court found, HTMI delayed bringing this action for almost 17 months after the issuance of the re-examination certificate for the '001 patent. This court has recognized that delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. *Hybritech Inc. v. Abbott Lab.*, 849 F.2d at 1457, 7 USPQ2d at 1200; *T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip. Corp.*, 821 F.2d at 648, 3 USPQ2d at 1318.

Absent a good explanation, not offered or found here, 17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief. *See, e.g., T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc.*, 821 F.2d at 648, 3 USPQ2d at 1318 (15–month delay plus grant of licenses by patentee sufficient to overcome presumption of irreparable harm); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276, 225 USPQ 708, 711 (2d Cir.1985) (trademark case; nine-month delay undercuts claim of irreparable harm); *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 609, 205 USPQ 1055, 1062 (S.D.N.Y.1979) (trademark case; one-year delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury"); *Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.*, 335 F.Supp. 278, 280, 173 USPQ 188, 190 (S.D.N.Y.1971) (copyright case; seven and one-half month delay; plaintiff's "claimed need for immediate relief is undercut by the slow pace with which plaintiff has sought to obtain it").

While the period of delay may not have been enough, standing alone, to demonstrate the absence of irreparable harm, it did not stand alone in this case. In addition to HTMI's delay in seeking relief, the evidence of HTMI's inactivity in the market, HTMI's apparent willingness to grant a license under its patent to New Image, the absence of any indication that money damages would be unavailable to remedy any loss suffered by HTMI, and the absence of any suggestion by HTMI as to why relief pendente lite is needed in this case, all suggest that HTMI has no compelling need for interim equitable relief.

*Infringement of Claim 30*

■ HTMI argues that the district court should have found a likelihood of infringement of claim 30 of the '001 patent, in addition to claim 24, and should have based its grant of injunctive relief on that ground as well. HTMI, however, did not file a cross-appeal from the portion of the district court's

order denying an injunction against infringement of claim 30. Although a prevailing party need not cross-appeal to defend a judgment on a ground rejected below, that rule does not apply if acceptance of the rejected contention would result in a modification of the judgment. *See A–Transport Northwest Co. v. United States,* 36 F.3d 1576, 1580 n. 7 (Fed.Cir.1994); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.,* 731 F.2d 840, 843–44, 221 USPQ 657, 660 (Fed.Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984). Because an injunction framed to grant relief from infringement of claim 30 would be different from, and in some respects broader than, one framed to grant relief from infringement of claim 24, HTMI's challenge to the court's ruling on claim 30 is not properly before this court in the absence of a cross-appeal.

### III

We conclude that the district court committed legal errors in its analysis of the issues of likelihood of success and irreparable harm. Because we further conclude that the preliminary injunction in this case cannot stand in the absence of findings favorable to HTMI on those issues, we reverse the district court's order granting the preliminary injunction.

*REVERSED.*